STATE EX REL., F. H. SCOFIELD D/B AS SCOFIELD BUS LINE, RESPONDENT, v. PUBLIC SERVICE COMMISSION OF MISSOURI, APPELLANT.—211 S. W. 2d 547.

Kansas City Court of Appeals.   Opinion delivered May 10, 1948.

. *John P. Randolph,* General Counsel, *Wilbur F. Hall,* Assistant Counsel, *J. L. Parks,* Assistant Counsel, for appellant, Missouri Public Service Commission.

*M. C. Matthes* and *J. W. Thurman* for Hugh L. Mitchell.

604

*June R. Rose* for respondent. No brief for respondent.

CAVE, P. J.—This action originated before the Missouri Public Service Commission upon the application of Hugh L. Mitchell, doing business as Sunset Stages, for a Certificate of Public Convenience and Necessity to operate *intrastate* as a passenger-carrying motor carrier over a regular route from Cape Girardeau, Missouri, over U. S. Highways Nos. 61 and 43 to Lutesville, Missouri and return. After due notice had been given all interested parties, a hearing was held by the Commission at which the respondent herein, F. H. Scofield, doing business as Scofield Bus Line, who operates over the same route under authority of the commission, appeared and protested the authority sought by the applicant. At the hearing protestant Scofield expressed a willingness to furnish additional service, and subsequent to the hearing filed a motion asking permission to file a new time schedule, which he had put into effect five days after the hearing, and asked that this new time schedule be made a part of the record herein. The motion was sustained and the schedule filed.

Thereafter, the commission issued its Report and Order granting the authority sought by applicant Mitchell. In due time respondent Scofield filed a motion for rehearing which set out as grounds therefor that the Report and Order was unlawful, arbitrary and capricious for the reason, among others, that the commission did not follow the mandates of Sec. 5725, R. S. 1939. This motion was overruled, and the cause was properly transferred to the Circuit Court of Cole County. After a hearing that court found the order of the commission was unlawful and unreasonable because the commission had failed to follow the provisions of said Sec. 5725 and rendered judgment setting the same aside. In due time appeal was perfected to this court.

For a number of years prior to this proceeding respondent Scofield had been operating a passenger-carrying motor bus over the above highways between Cape Girardeau and Lutesville under a certificate of convenience and necessity issued by the commission, and serving the same points which are sought to be served by applicant Mitchell. But the evidence was overwhelming that he was not rendering the service needed and that additional service over said route was necessary to public convenience. In fact Scofield admitted, at the hearing, that additional service was necessary and offered to give such additional service as the commission might find to be needed, and testified concerning his ability to do so; and, as heretofore stated, filed a motion making such request, and did establish a new schedule showing three round trips daily between Lutesville and Cape Girardeau. Prior to that time he had been operating under a schedule of one round trip daily.

Respondent has not favored us with a brief. The primary question presented by appellant's brief and by the record, is one requiring the construction of Secs. 5724 and 5725, R. S. 1939. Sec. 5724 provides for the procedure of the commission upon an application for a certificate of convenience and necessity before any motor carrier may operate or furnish service as a common carrier within this state; and it requires that if the commission shall find from the evidence presented that public convenience and necessity will be promoted by the creation of the service proposed, a certificate therefor shall be issued. It further charges that the commission, in determining whether or not a certificate should be granted, *shall give reasonable consideration to the transportation service being furnished at that time by other common carriers* and give due consideration to the likelihood of the proposed service being permanent and continuous throughout 12 months of the year, *and the effect which such proposed transportation service may have upon other transportation being rendered.* The section also provides, that no vested right shall accrue to any certificate of convenience and necessity, and that the issuance of a certificate to one carrier "* * * shall not prohibit the granting of such certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity will be promoted by so doing."

The pertinent part of Sec. 5725 reads: "The commission may at any time, for good cause, suspend, and upon at least 10 days notice to the grantee of any certificate, and an opportunity to be heard, revoke, alter or amend any certificate, issued under the provisions of the article: Provided, that on finding of the commission that any motor carrier does not give convenient, efficient and sufficient service in accordance with the order of the commission, such motor carrier shall be given a reasonable time, not more than sixty days, to provide such service before any existing certificate is canceled or revoked or

*a new one granted to some other motor carrier over the same route."*
(Italics ours).

The real question for consideration is whether the commission may grant another certificate to a new carrier over the same route where another or other carriers are operating under a certificate, if there is substantial evidence of the need, *without first giving the original carrier or carriers a reasonable time, not exceeding 60 days, to supply convenient, efficient and sufficient service.* Appellant contends that Sec. 5725 relates to and is controlling only when the commission conducts a hearing for the purpose of *revoking, altering or amending* any certificate which has theretofore been issued; and that said section does not relate to and is not controlling in a hearing by the commission to determine the necessity of issuing a certificate to a carrier under such Sec. 5724.

This question has not been specifically decided by an appellate court in this state. The case of State ex rel. Missouri, Kansas and Oklahoma Coach Lines, Inc., et al. v. Public Service Commission, 179 S. W. (2d) 132, 137, briefly and indirectly refers to the question as follows:

"However, it is contended that the Commission acted arbitrarily in not permitting the bus companies already in the field to afford the required service.

"The motion for rehearing filed before the Commission stresses that the additional service is not necessary. It makes no allegation that the Commission acted improperly in not permitting contestants to furnish the new service. Under such circumstances, the point is not preserved. Sec. R. S. Mo. 1939, Mo. R. S. A.; State ex rel. to Use of Alton R. Co. v. Public Service Commission, Mo. Sup., 100 S. W. 2d 474; State ex rel. Pitcairn v. Public Service Commission, 232 Mo. App. 535, 111 S. W. 2d 222. In addition to this, we are of the opinion that the Commission did not act unreasonably or unlawfully in the premises. Priority in the field, while an element to be considered, is not, of itself, conclusive in the matter of granting or refusing a certificate, but this matter should be determined upon a consideration of which utility, under the peculiar facts and circumstances, will best serve the public. Sec. 5724, R. S. Mo. 1939, Mo. R. S. A.; State ex rel. Crown Coach Co. et al. v. Public Service Commission, 179 S. W. 2d. 123, decided by this court, but not yet reported (in State Report); Bartonville Bus Line v. Eagle Motor Coach Line; 326 Ill. 200, 157 N. E. 175."

What we said there was not necessary to a decision of that case, but we adhere to the general proposition stated.

The State of Louisiana has enacted quite similar legislation regulating motor carriers to that found in Missouri. In the case of Bradford v. Louisiana Public Service Commission et al., 189 La. 327, 179

So. 442, the identical issue to the case at bar was presented to the Supreme Court of that state for a judicial determination. The court rejected the argument that a section of the law regulating motor carriers which required a reasonable time to be given a carrier to provide efficient and sufficient service before *revocation* of a certificate, or *a new one granted over the same route,* was applicable and controlling of the actions of the commission in granting a *new certificate* to a new carrier under the provisions of another section quite similar to our Sec. 5724. In that case the commission had granted a certificate over a route already occupied by other carriers, and such carriers protested and argued that such action of the commission was unlawful and arbitrary because the commission had not given the present carriers an opportunity to improve their service under a statute quite similar to our Sec. 5725. In rejecting this contention, the Supreme Court said (446):

"* * * The plaintiff's whole contention is that no new certificate can be granted until the existing grantee is given a reasonable time to provide the service the commission finds necessary after a hearing thereon. The plaintiff's certificate is not sought to be canceled for failure to provide the service required by the Commission. Therefore, the plaintiff would not come under the provisions of this paragraph. The words 'Or a new one granted over the route' used in the paragraph clearly mean the granting of a new certificate in lieu of the one that is canceled."

The regulation of motor carriers in the State of Tennessee is governed by similar statutes to those found in Missouri. Secs. 5 (a) and (b) of Chapter 119, Public Acts 1933, are almost identical to the wording of our Sec. 5724, and Sec. 10, of said chapter, is practically the same as our Sec. 5725. In Dunlap v. Dixie Greyhound Lines, Inc. et al., 178 Tenn. 532, 160 S. W. (2d) 413, the protestants to an application for a new certificate over the same route they were serving contended that a certificate could not be granted unless the existing carriers had been given a reasonable opportunity to furnish such additional service as may be required. The protestants relied upon Sec. 10 of the Tennessee Act, the material part of which reads: "The commission may at any time, for good cause, suspend any certificate of convenience and necessity * * * and upon ten days' notice to the holder of any certificate * * * may for proper cause revoke, alter or amend any certificate, * * *. Provided, that on finding of the Commission that any motor carrier operating between points within this State does not give convenient, efficient and sufficient service in accordance with the orders of the commission, such motor carrier shall be given a reasonable time, not more than sixty days, to provide such service before any existing certificate is canceled or revoked *or a new certificate granted to some other motor carrier* over the same route or routes." (Italics ours). In construing this section and in denying

the contention of the protestants that they had not been given a reasonable time to improve their service as required by Sec. 10, the Supreme Court said (418): ''It is apparent that the above quoted paragraph of the Act has reference to and applies only to a motor carrier whose certificate is about to be cancelled, altered or amended, upon good and proper cause found by the Commission, after notice to the carrier and a hearing. The Commission, in the instant case, is not seeking to revoke, alter or amend any certificate held by protestants. Hence the second paragraph of Section 10 is not pertinent to any issue in the case.''

In some states the statute authorizing the issuance of a certificate of convenience and necessity specifically requires the commission to give to prior carriers an opportunity to supply the service needed before issuing a new certificate. This branch of the question is ably reviewed by the Supreme Court of Wyoming in Robinson v. Gallagher Transfer and Storage Co., 125 Pac. (2d) 157. In that state there is no statute requiring the Commission to give prior certificate holders an opportunity to improve their service or requiring the commission to take into consideration the fact that there are other carriers operating over the same route, and the court held that it could not and would not declare such to be the policy of the law because it would tend to create a common carrier monopoly on the public highways.

Our Sec. 5724 definitely contemplates that the commission shall have the authority to issue a new certificate over a designated route which is already being served by other certificate holders, because it directs that the commission, in deciding whether a certificate shall be issued, ''* * * shall give reasonable consideration to the transportation service being furnished * * * and the effect which such proposed transportation service may have upon other transportation service being rendered: * * *'' We think this language establishes the public policy of this state to be one of *regulated competition* for the benefit of the public and not one of *regulated monopoly*, insofar as common carriers using the highways are concerned. See State ex rel. Missouri, Kansas & Okl. Coach Lines, Inc. v. Commission, supra; State ex rel. Crown Coach Co. v. Commission, 179 S. W. (2d) 123.

We are of the opinion that Sec. 5725 is not applicable to the proceedings in this case. There is no effort being made to *revoke, alter* or *amend* respondent's certificate. If it should be held that said section is applicable, then it would become mandatory on the commission to give respondent, or any prior certificate holder, a reasonable time, not exceeding 60 days, to supply the service needed, and such a construction would be in direct conflict with Sec. 5724, which authorizes the issuance of additional certificates over the same route being served by prior certificate holders ''* * * if in the opinion of the commission the public convenience and necessity will be promoted by so doing.''

The trial court not only held that the order of the commission was unlawful and unreasonable because the commission had failed to follow Sec. 5725; but also held the order unlawful because of certain evidence we now consider. The hearing was held on October 5, 1945, at which time the overwhelming evidence was to the effect that the service which had been rendered by respondent for the past several years was wholly inadequate, and that there should be two additional round trips between the designated towns each day. Respondent himself conceded the need for this additional service, and at the hearing offered to institute such additional service as the commission might require; and within five days after the hearing filed with the commission a new time schedule showing three round trips daily over this route and requested the commission to approve the same, which was done. Such service was being continued at the time of the hearing in the circuit court. The order of the commission granting applicant's certificate was issued on November 27, 1945, and the judgment of the circuit court was entered on July 3, 1946. The question is, was the order of the commission unlawful and unreasonable because of the fact that respondent, within five days after the hearing, instituted the service which the evidence at the hearing proved was needed? In discussing and disposing of this question, the commission declared:

"While the Commission takes notice that the new time schedule has been filed, we also take notice that it was filed after the hearing and that the additional schedules were put on by protestant thereafter. We are of the opinion that the mere putting on of additional schedules after a hearing cannot of itself defeat the applicant's right to obtain a certificate of convenience and necessity. To set such a precedent would be unfair to applicants and work to the detriment of the public interest for in almost every case, where additional service is needed by the public, existing certificated carriers would wait until an application was filed and after the evidence had been presented to testify that they would put on the additional schedules to take care of the needs and thereby cause the application to be denied. We do not believe that it was ever the intention of the law to permit a carrier holding a certificate of convenience and necessity to operate in a manner that was most advantageous to him and to the detriment of the public, and then when faced with an application for a certificate to operate over the same route contend that he should be protected because he was putting on additional schedules. * * *

"It may become necessary for the Commission to rearrange and adjust the schedules of applicant and protestant should it later develop that there is no need for certain schedules and that they are unprofitable. We are of the opinion that the Bus and Truck Law gives us this right. State ex rel. Crown Coach Co., et al. v. Public Service Commission, 179 S. W. 2d, 123.''

From a review of the whole record, we conclude that the order of the commission is supported by competent and substantial evidence; and that it did not abuse its discretion in granting applicant a certificate of convenience and necessity. Sec. 22, Art. V., Constitution, 1945; Scott v. Wheelock Bros., 209 S. W. (2d) 149 (Mo. En Banc); Seabaugh's Dependents v. Garver Lumber Co., 200 S. W. (2d) 55, (Mo. En Banc).

It follows that the judgment of the Circuit Court should be reversed and the cause remanded with directions to affirm the Report and Order of the Commission. It is so ordered. All concur.